## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSHUA MOSLEY,

           Plaintiff,

v.

CHARTER TOWNSHIP OF BEDFORD,
a Michigan municipal corporation;
BARRY BEAMISH II, individually;
ERICA MILLER, individually;
STACY GREENWOOD, individually;
and JOYCE FERACO, individually,

           Defendants.

Case No.  1:26-cv-2271
Hon.

---

David M. Blanchard (P67190)
Cali N. Winslow (P88487)
BLANCHARD & WALKER, PLLC
*Attorney for Plaintiff*
221 N. Main St., Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
winslow@bwlawonline.com

---

## **COMPLAINT AND JURY DEMAND**

Plaintiff Joshua Mosley, by and through his attorneys, Blanchard & Walker, PLLC, states the following as his Complaint against Defendants Charter Township of Bedford, Barry Beamish II, Erica Miller, Stacy Greenwood, and Joyce Feraco, and alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for damages and other relief arising out of Defendants' unlawful retaliation and race discrimination against Plaintiff Joshua Mosley, a Black man, whose accepted offer of employment as Code Compliance Officer for the Charter Township of Bedford was rescinded by the Township Board on February 8, 2024 — one day after it was extended — because of Plaintiff's race and because Plaintiff had previously filed a charge of discrimination, pursued litigation, and reached a settlement against a prior public employer.

2.     Plaintiff brings claims for (a) retaliation and race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; (b) race discrimination under 42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983; (c) deprivation of equal protection of the law under the Fourteenth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983; and (d) parallel claims for race discrimination and retaliation under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

## JURISDICTION AND VENUE

3.     This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under Title VII, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and 42 U.S.C. § 1983.

4.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as Plaintiff's federal claims.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Charter Township of Bedford is located in Calhoun County, Michigan, within this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in Calhoun County, Michigan.

6.     This Court has personal jurisdiction over each Defendant because Defendant Charter Township of Bedford is a Michigan municipal corporation located within this District, and each Individual Defendant, at all relevant times, resided in and/or performed the acts described herein within this District.

## PARTIES

7.     Plaintiff Joshua Mosley ("Mr. Mosley") is a Black man and a resident of Battle Creek, Calhoun County, Michigan.

8.     Defendant Charter Township of Bedford ("Township") is a Michigan municipal corporation organized under the laws of the State of Michigan, located at 115 S. Uldriks Drive, Battle Creek, Michigan 49037. The Township is a "person" within the meaning of 42 U.S.C. § 1983, an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and an "employer" within the meaning of ELCRA, MCL 37.2201(a).

9. Defendant Barry Beamish II was, at all relevant times, a Trustee on the Township Board and a member of the interview panel that recommended Plaintiff's hire. He is sued in his individual capacity. At all relevant times he acted under color of state law.

10. Defendant Erica Miller was, at all relevant times, the Township Treasurer, a member of the Township Board, and a member of the interview panel that recommended Plaintiff's hire. She is sued in her individual capacity. At all relevant times she acted under color of state law.

11. Defendant Stacy Greenwood was, at all relevant times, a Trustee on the Township Board. She is sued in her individual capacity. At all relevant times she acted under color of state law.

12. Defendant Joyce Feraco was, at all relevant times, the Township Clerk and a member of the Township Board. She is sued in her individual capacity. At all relevant times she acted under color of state law.

13. Defendants Beamish, Miller, Greenwood, and Feraco are referred to collectively as the "Individual Defendants."

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14. On or about August 5, 2024, Plaintiff signed, and on August 13, 2024, Plaintiff filed, a Charge of Discrimination with the U.S. Equal Employment

4

Opportunity Commission ("EEOC"), Charge No. 471-2024-06549, naming the Township as Respondent and alleging retaliation.

15. On May 13, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights advising Plaintiff of his right to sue within 90 days of receipt of that Notice.

16. Plaintiff files this Complaint within 90 days of his receipt of the EEOC's Notice of Right to Sue and has therefore exhausted his administrative remedies and satisfied all conditions precedent to filing his Title VII claims.

17. Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause do not require exhaustion of administrative remedies with the EEOC.

18. Plaintiff has complied with all applicable notice and filing requirements under Michigan law with respect to his ELCRA claims.

## FACTUAL ALLEGATIONS

19. Plaintiff is a Black man who, prior to the events described herein, filed a charge of discrimination with the EEOC against a former public employer, Charter Township of Emmett ("Emmett Township"), alleging race discrimination, and who thereafter pursued and settled related litigation against Emmett Township (the "Emmett Township Matter").

20.    In late 2023 and early 2024, Plaintiff applied for the position of Code Compliance Officer with the Township, a position that had been held on a temporary basis by James Wolfersberger, a Caucasian man, since on or about September 1, 2023.

21.    Plaintiff was one of only two candidates interviewed for the position, the other being Mr. Wolfersberger.

22.    Plaintiff was interviewed by a panel consisting of then-Superintendent Dennis McKinley, Defendant Beamish, and Defendant Miller.

23.    Following the interviews, the interview panel — including Defendants Beamish and Miller — agreed that Plaintiff was the most qualified candidate for the position based on his relevant experience, including his training on the electronic tracking system used for code compliance documentation, and that Mr. Wolfersberger had less relevant experience and would require additional training at additional cost to the Township.

24.    Trustees Greenwood and Faraco had already made known that they would not support hiring Mosley because of his prior claim of race discrimination.

25.    However, with the support of Trustees Breamish and Miller, Superintendent McKinley believed the hire would be approved.

26.     On or about February 7, 2024, Superintendent McKinley extended Plaintiff a formal offer of employment for the Code Compliance Officer position, after receiving confirmed support from members of the Township Board.

27.     Plaintiff accepted the Township's offer of employment on February 7, 2024.

28.     Superintendent McKinley informed Plaintiff that a public Township Board meeting would take place the following day, February 8, 2024, to formalize his hire, but that Plaintiff's attendance was not necessary.

29.     Shortly before the February 8, 2024 meeting, Defendant Beamish telephoned Superintendent McKinley and stated, in substance, that Plaintiff had "better come [to the meeting] if he wants a job." Superintendent McKinley relayed this warning to Plaintiff, who then attended the meeting.

30.     At the February 8, 2024 Township Board meeting, during the public comment period, Adam Heikkila, a former Township Supervisor, spoke in opposition to Plaintiff's hire. Mr. Heikkila told the Board that it should not hire Plaintiff because Plaintiff had a criminal record and because Plaintiff's prior employment with Emmett Township had ended in an EEOC charge, a lawsuit, and a settlement, and that the Board should be concerned about being sued.

31.     A second man, whose identity has not yet been confirmed, made similar public comments opposing Plaintiff's hire on the same basis.

32. After the meeting, Mr. Heikkila told Plaintiff that he had been asked to make his public comment by Jim Mead, a former official of Emmett Township and the adverse party to Plaintiff in the Emmett Township Matter.

33. Following the public comments, the Township Board took up Resolution No. 02/08/24/16 to formally hire Plaintiff as Code Compliance Officer. Trustees Kraig Dingman and Mark Hires voted in favor. Defendants Beamish, Miller, Greenwood, and Feraco voted against — notwithstanding that Defendants Beamish and Miller had, days earlier, agreed that Plaintiff was the most qualified candidate for the position. The resolution to hire Plaintiff failed.

34. Immediately thereafter, the Township Board took up and passed Resolution No. 02/08/24/18, hiring Mr. Wolfersberger — a Caucasian man — as Code Compliance Officer, notwithstanding the Board's own prior assessment that Mr. Wolfersberger was less qualified than Plaintiff and would cost the Township more due to the need for additional training.

35. The Township Board did not disavow, condemn, or otherwise distance itself from the public comments referencing Plaintiff's race, criminal history, or the Emmett Township Matter before voting to rescind Plaintiff's offer of employment.

36. Defendants Beamish, Miller, Greenwood, and Feraco voted against hiring Plaintiff because of Plaintiff's race and/or because Plaintiff had previously

filed a charge of discrimination, pursued litigation, and reached a settlement against Emmett Township.

37. As a result of the Township's decision to rescind Plaintiff's job offer, Plaintiff has suffered a loss of wages and benefits, including the loss of a position that paid a materially higher rate of pay than Plaintiff's prior employment.

38. Since the events described above, Plaintiff has applied for other positions and has not secured comparable employment.

39. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, embarrassment, emotional distress, and damage to his professional reputation, having been publicly denounced at a recorded public meeting on the basis of his race and his exercise of protected civil rights.

## <u>COUNT I</u>
### RETALIATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-3(a))
### (Against Defendant Charter Township of Bedford)

40. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 38 above as if fully set forth herein.

41. Plaintiff engaged in activity protected under Title VII by filing a charge of discrimination against, and pursuing and settling litigation against, Emmett Township.

42. The Township, through its Board, knew of Plaintiff's protected activity at the time it rescinded Plaintiff's offer of employment.

43. Rescinding Plaintiff's offer of employment constitutes a materially adverse employment action.

44. A causal connection exists between Plaintiff's protected activity and the Township's decision to rescind his offer of employment, as demonstrated by, among other things, the temporal proximity between the public disclosure of Plaintiff's protected activity and the Board's vote, and the reversal by Board members of their previously expressed support for hiring Plaintiff immediately following that disclosure.

45. The Township's stated and/or implied reasons for rescinding Plaintiff's offer of employment are pretextual.

46. As a direct and proximate result of the Township's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensatory damages.

## COUNT II
### RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a))
### (Against Defendant Charter Township of Bedford)

47. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 45 above as if fully set forth herein.

48. Plaintiff is a member of a class protected under Title VII on the basis of his race (Black).

10

49.    Plaintiff was qualified for the Code Compliance Officer position and was, in fact, assessed by the Township's own interview panel as the most qualified candidate for the position.

50.    The Township rescinded Plaintiff's offer of employment and instead hired a similarly situated candidate outside Plaintiff's protected class, James Wolfersberger, who is Caucasian and whom the Township's own interview panel had assessed as less qualified.

51.    The Township's stated and/or implied reasons for rescinding Plaintiff's offer and hiring Mr. Wolfersberger instead are pretextual, and Plaintiff's race was a motivating factor in the Township's decision.

52.    As a direct and proximate result of the Township's unlawful race discrimination, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensatory damages.

<div align="center">

**COUNT III**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**
**(Enforced Through 42 U.S.C. § 1983)**
**(Against All Defendants)**

</div>

53.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 51 above as if fully set forth herein.

54.    42 U.S.C. § 1981 guarantees Plaintiff the same right to make and enforce contracts, including contracts of employment, as is enjoyed by white citizens.

55. Plaintiff's accepted offer of employment with the Township constituted a contractual relationship protected by 42 U.S.C. § 1981.

56. Defendants intentionally interfered with and terminated that contractual relationship because of Plaintiff's race.

57. Because Defendant Charter Township of Bedford is a municipal corporation, Plaintiff's § 1981 claim against it is enforced through 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

58. The Township Board is the final policymaking authority for the Township with respect to the hiring decision at issue, and its February 8, 2024 vote rescinding Plaintiff's offer of employment therefore constitutes an act of official Township policy for which the Township is liable. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

59. The Individual Defendants, acting under color of state law and within the scope of their official duties as members of the Township Board, personally participated in the decision to rescind Plaintiff's offer of employment because of Plaintiff's race.

60. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensatory damages. Defendants' conduct was malicious, willful, and/or in reckless disregard of Plaintiff's federally

protected rights, entitling Plaintiff to punitive damages against the Individual

Defendants.

## COUNT IV
## DEPRIVATION OF EQUAL PROTECTION OF THE LAW
### (U.S. CONST. AMEND. XIV; 42 U.S.C. § 1983)
### (Against All Defendants)

61.    Plaintiff realleges and incorporates by reference the allegations in

paragraphs 1 through 59 above as if fully set forth herein.

62.    The Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution guarantees Plaintiff the right to be free from intentional

race discrimination in public employment decisions by a governmental body.

63.    Defendants, acting under color of state law, intentionally discriminated

against Plaintiff on the basis of his race by rescinding his offer of public

employment.

64.    The right to be free from intentional race discrimination in public

employment was clearly established at the time of Defendants' conduct, such that a

reasonable public official in Defendants' position would have known that rescinding

Plaintiff's job offer because of his race violated the Equal Protection Clause.

65.    The Township Board's February 8, 2024 vote constitutes official

municipal action by the Township's final policymaking authority, rendering the

Township liable under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs*., 436

U.S. 658 (1978).

13

66.    The Individual Defendants personally participated in, and are individually liable for, the constitutional violation described herein.

67.    As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensatory damages. Defendants' conduct was malicious, willful, and/or in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages against the Individual Defendants.

## COUNT V
## RACE DISCRIMINATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## (MCL 37.2202)
## (Against All Defendants)

68.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 66 above as if fully set forth herein.

69.    MCL 37.2202(1)(a) prohibits an employer from failing or refusing to hire an individual because of race.

70.    The Township is an "employer" within the meaning of MCL 37.2201(a).

71.    The Individual Defendants acted as agents of the Township with respect to the hiring decision at issue and are individually liable under ELCRA.

14

72.    The Township, acting through the Individual Defendants and other members of the Township Board, refused to hire Plaintiff because of his race, in violation of MCL 37.2202.

73.    As a direct and proximate result of Defendants' violation of ELCRA, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensatory damages.

<div align="center">

**COUNT VI**
**RETALIATION IN VIOLATION OF**
**THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**(MCL 37.2701)**
**(Against All Defendants)**

</div>

74.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 72 above as if fully set forth herein.

75.    MCL 37.2701(a) prohibits retaliation against a person because that person has opposed a violation of ELCRA or has filed a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under ELCRA or comparable civil rights laws.

76.    Plaintiff's prior charge of discrimination, litigation, and settlement against Emmett Township constituted protected activity under MCL 37.2701.

77.    Defendants rescinded Plaintiff's offer of employment because Plaintiff had engaged in this protected activity.

78.    As a direct and proximate result of Defendants' retaliation in violation of ELCRA, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Mosley respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

A.    Compensatory damages, including but not limited to back pay, front pay, and damages for emotional distress, humiliation, and loss of professional reputation, in an amount to be determined at trial;

B.    Punitive damages against the Individual Defendants, and, to the extent available by law, against Defendant Charter Township of Bedford, in an amount to be determined at trial;

C.    Pre-judgment and post-judgment interest as allowed by law;

D.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, MCL 37.2802, and other applicable law;

E.    Instatement to the position of Code Compliance Officer or a comparable position, or front pay in lieu thereof, and such other injunctive and equitable relief as may be appropriate;

F.    Such other and further relief as this Court deems just and equitable.

16

## DEMAND FOR JURY TRIAL

Now Comes Plaintiff, Joshua Mosley, by and through his attorneys, Blanchard

& Walker, PLLC, and hereby demands a trial by jury in the above-captioned matter.

<div style="margin-left: 45%;">

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ David M. Blanchard
David M. Blanchard (P67190)
Cali N. Winslow (P88487)
*Attorney for Plaintiff*
221 N. Main St., Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
winslow@bwlawonline.com

</div>

Dated: August 6, 2026